## Folk *against* Beidelman.

In an action of ejectment, evidence of the mere silence of the plaintiff, and the improvement of his property by others, will not deprive him of his title; yet aid and encouragement to keep up and repair the property and the expenditure of money in consequence thereof, would in equity give a title to the defendant.

ERROR to the common pleas of *Columbia* county.

Ejectment by Valentine Beidelman against John Folk, for ten acres of land covered with water, including part of a dam and water power.  For the facts of the case, see the former report in 5 *Watts*, p. 308.

*Cooper* and *Bellas*, for plaintiff in error.
*Greenough* and *Hepburn*, for defendant in error.

The opinion of the Court was delivered by

SERGEANT, J.—This was an ejectment for ten acres of land covered with water: and the ground in controversy consisted of a small portion on the east side of Fishing creek.  The plaintiff's tract of land lies on the eastern side of the creek, and the defendant's on the western side.  The defendant has a mill, and the water of the creek is turned to it by a dam thrown across the creek from his land, to the eastern portion of ground, which, with the eastern abutment of the dam, the plaintiff alleges is his ground.  The dam was originally erected in the year 1813, by one Dietrike, who in that year purchased the western tract from Lawrence Miller, to whom it was conveyed in 1802, by Peter Vanetta.  In 1817, Dietrike sold to the defendant Folk.  Peter Vanetta owned the eastern tract before his sale to Miller, and since, till within two or three years before this suit, when it descended to his heirs, under whom the plaintiff holds.  The dam was repeatedly injured or destroyed by freshets, and was from time to time repaired by Dietrike and Folk respectively.  The defendant seems to have contended for a title on various grounds: that according to the boundary understood and agreed on between the parties, the *locus in quo* fell within his tract; that he had had possession for thirty years; that Miller purchased his tract for a mill seat, and it was declared and understood by Vanetta, and understood by both parties, that the real boundary intended, was not inserted in the deed by fraud or mistake; that a consentable line was agreed on; that Vanetta was present at various times when the dam was repaired by Dietrike, and by Folk, after being swept away by floods, and assented to these repairs, and encouraged them to rebuild, and that

under this assent and encouragement, they had expended large sums of money in improvements on their tract, and Folk was induced to purchase from Dietrike at a large price, and the tract would be of little value to the defendant, if the plaintiff recovered and the mill were destroyed; whereas, the site in question was of little or no value to the plaintiff. On these and other matters, a great deal of evidence was given by both parties at the trial, and numerous bills of exceptions were taken to the matters of evidence, and to the charge of the court which are now assigned for error.

1. The plaintiff having shown his deeds, the defendant offered to prove, that the defendant and those under whom he claims, viz: Elias Dietrike and Lawrence Miller held adverse and exclusive possession of the premises, claiming in their own right, for more than thirty years last past. That a boundary line was agreed upon, and a birch tree established by and between Peter Vanetta and Lawrence Miller in 1801, as a consentable line between them of their contiguous possession, on the east bank of Fishing creek, and their possession ever since has been in accordance with that boundary, which gives the premises in question to the defendant: that the defendant, and the said Dietrike before him, at various intervals, from the year 1813 inclusive, have made large and valuable improvements under the eyes, and some with the assent, assistance and approbation of Peter Vanetta, upon the adjacent lands of defendant; which improvements are of little or no value without the dam and water power in question; and also, improvements upon the part in question, and said Vanetta, during all this period made no claim to the premises, nor gave the defendant any notice, and during this the defendant was paying large sums of money on his purchase from Dietrike, amounting in all to 16,000 dollars. That said Vanetta, in fact, sold the said premises to said Miller in 1800—and in 1801, in 1811 or 1812, and at other times as late as 1828, so declared to a number of witnesses, showing the premises, and stating that he had sold the same for a mill-seat to said Miller, and this while the defendant was using the premises by a mill and dam, or dams, which had been maintained there from the year 1813, by defendant and said Dietrike; and that said defendant, in full reliance on the said conduct of P. Vanetta, and by it assured of the goodness of his title to the premises, paid the said large sums for the said purchase money, and expended a large amount for the said improvements. That the premises in question were not described nor included in the deed given in evidence from said Vanetta to said Miller, by mistake and by fraud, and said Vanetta repeatedly confessed and acknowledged to several witnesses, that the premises in question were sold by him to said Miller, with the other land in said deed, and that he had no right nor possession in the same, and that the boundaries stated in

said deed cannot be pursued on the ground, but are erroneous and totally impracticable.

The plaintiff objected to evidence of conversation in 1801, with Vanetta respecting other boundaries between him and Miller, than those decribed in his deed to Miller. Also, to parol declarations of Vanetta of the extent of his sale to Miller, so far as the same tends to establish other lines than the deed calls for. The plaintiff did not object to proof of actual adverse possession in Folk, and those under whom he claims; nor that Vanetta aided Dietrike or Folk in making improvements on the land in dispute in this case, or assented to their being made.

The court decided that the evidence of Lawrence Miller in relation to a sale in 1800, and a boundary established in 1801, before the deed of 1802, and varying from it, be rejected. The evidence in regard to improvements upon the adjacent land, payment of 16,000 dollars, and the silence of Vanetta in reference thereto, is rejected until some evidence is given of a license or grant of the privilege here claimed of abutting upon the plaintiff's land. The other evidence stated in the offer admitted, commencing with the evidence of exclusive possession in defendant and those under whom he claims. To this rejection the defendant excepted.

The evidence offered in relation to a sale before the deed of 1802, and varying from it, was held not to be admissible in the former decisions of this court between these parties, reported 5 *Watts* 308, and it is unnecessary to repeat the reasons. The evidence in regard to improvements on the adjacent land of defendant, payment of money and silence of Vanetta, were rightly decided to be inadmissible, as they would alone confer no title on the defendant.

2. The defendant offered to prove by F. Miller, that P. Vanetta repeatedly acknowledged that he had sold to Lawrence Miller for a mill seat and deprived himself of it; and that the mill could not be useful or valuable without butting on the east bank of the creek. This was offered to prove that P. Vanetta had made a grant and given a license to Miller to erect and butt his dam on Vanetta's side of the creek: and the defendant also offered to prove that Vanetta showed the place at the time of these acknowledgments.

This evidence was objected to and overruled.

This evidence was also rightly overruled, and in conformity with the opinion of this court in the former decision.

3. Joshua Mendenhall was examined by the defendant, as a witness, and stated that Dietrike said an island in the creek did not belong to him altogether. The plaintiff asked the witness whether he had heard Dietrike call the big island Vanetta's while he lived there? The defendant objected, and the court admitted the evidence.

I perceive no error in this. The ownership of the island bore upon the question of boundary, concerning which the witness had been examined by the defendant. As the defendant claimed under

Dietrike, what Dietrike said while he lived there was evidence for the plaintiff, especially on the cross-examination.

4. The defendant offered to prove by Lawrence Miller, that in 1801 his father went into actual possession of the east bank of Fishing creek at the dam, which was delivered to him by Peter Vanetta, and that Miller remained in possession six or seven years. This was not by inclosure, but by going upon the ground in pursuance of the declarations of Vanetta, repeating his actual entry upon it, frequently for a period of six years, during which time Peter Vanetta made no claim to the property. This evidence being objected to by the plaintiff, was rejected.

The sort of entry here spoken of, by merely going upon the ground frequently, but without inclosure or actual possession, would not, in legal contemplation, constitute such an ouster of the plaintiff as to bring the defendant within the protection of the limitation act. The evidence, therefore, was properly rejected.

The 5th, 6th, 7th and 8th bills may be dismissed with the observation that, we conceive they have been, in substance, decided in the former case.

The 9th bill of exception is to the rejection by the court of a draft of a survey, made by one Lount, offered by the defendant, who showed that he got it of Dietrike when he obtained his deed. The defendant objected, in the first place, that it did not appear that this draft was made at the time of the purchase by Miller, and it was not proved in any way that it was made for Miller or Vanetta. 2. That it did not correspond in courses and distances with the deed, and it is not a draft of the same land mentioned in the deed. 3. On the face are marks of a recent date by ink different from the original, and since the original. It was admitted that Miller and Dietrike are dead. This draft was objected to by the plaintiff and overruled by the court.

This appears to have been a survey made by Lount; but when, or for whom, or on what occasion, there is no evidence of. It was, therefore, not evidence.

It will be perceived, from what has been said, that most of the points now made in the cause have already been heard, and, in effect, decided upon in the former writ of error between the parties; and in relation to the errors assigned in the charge, the same remarks may be made. The chief, if not the only feature which distinguishes the present case from the former, is that which relates to the assent and encouragement given by Vanetta to the defendant and Dietrike, in the rebuilding or repairing of the dam from time to time. And here we think the court went too far in the conclusion, in withdrawing the case altogether from the jury, and stating that the defendant had no defence in law or equity, and that upon the whole evidence in the cause, the plaintiff was entitled to recover. There was certainly some evidence given by the defendant to show

[Folk v. Beidelman.]

that at various times and in various ways, both when the mill belonged to Dietrike and afterwards to Folk, Peter Vanetta aided and assisted in repairing and rebuilding the dam. And although much evidence was given of a contrary tendency, yet it was for the jury to decide on the credibility of the witnesses and the strength of the evidence, if the evidence for any party be but slight, yet, if there be evidence at all, the court cannot withdraw the facts from the jury: and though the mere silence of Vanetta, and the making of improvements by others, would not of themselves take away the plaintiff's title, yet aid and encouragement to keep up and repair the dam, and the expenditure of money in consequence thereof, would, in equity, give a title to the defendant.

Judgment reversed, and a *venire de novo* awarded.